## A99A1305. GAGNON v. THE STATE.
### (525 SE2d 127)

PHIPPS, Judge.

On the morning of August 7, 1997, Phillip Gagnon entered For Your Eyes Only, a Columbus lingerie modeling establishment. Only one female employee was working at the time, although a male security guard was on the premises. She gave Gagnon the "lingerie shop pitch": the models dance close to the customer, the models work solely for tips, and the erotic level of the session depends on the amount of the tips. Gagnon asked whether sex was involved, and she indicated, as instructed, so not to lose the customer, only that the better the tips, the more erotic the session. Gagnon left the shop to get cash from an automatic teller machine. He returned and paid the initial fee of $31.

After Gagnon had tipped the model $45, and she was dancing nude for him in a session room, he produced a loaded gun. He occasionally motioned toward the lower part of her body with it and at least once pointed the gun at her stomach. The model was frightened to the point of shaking but decided to continue dancing to avoid a confrontation. Gagnon motioned to his crotch with his head, still holding the gun. She understood that to mean he wanted oral sex, and she obliged. She asked him why he had a gun and told him that it was making her nervous. Gagnon said that he needed the gun for protection. Then he had vaginal sex with her while holding the gun. She testified that Gagnon had indicated what he wanted with motions and gestures and that he was very calm, but that she had been terrified and only wanted to escape without being shot.

Gagnon eventually put the gun down while engaged in intercourse, and the model immediately grabbed it, but Gagnon grabbed for the gun as well, and the two struggled to claim it. During the struggle the gun was sometimes pointed at her head. She shouted for the security guard. He entered the room and became involved in the struggle for the gun. The gun discharged but did not injure anyone. The model left the room when the security guard had control of the situation.

Gagnon was charged with rape, aggravated sodomy and aggra-

vated assault. He was tried before a jury and convicted of aggravated assault and the lesser included crime of sodomy. He was sentenced to concurrent twenty-year sentences, with the last five years to be served on probation. He appeals from these convictions. We find no merit in Gagnon's enumerations of error and affirm.

1. Gagnon enumerates as error the trial court's jury charge on the lesser included crime of sodomy.

The State did not submit a request for a jury charge on sodomy before trial but requested one after the close of the evidence. Uniform Superior Court Rule 10.3 provides that "All requests to charge shall be . . . submitted to the court . . . at the commencement of trial, unless otherwise provided by pre-trial order; provided, however, that additional requests may be submitted to cover unanticipated points which arise thereafter."

The State was aware that sodomy would be an issue raised by the evidence but chose to request at the commencement of trial only a charge on aggravated sodomy and not on the lesser included crime of sodomy. The State argues that it did not violate Rule 10.3 because it did not anticipate that Gagnon would testify consistent with his written confession, in which he admitted to consensual sodomy. We find this argument unpersuasive. However, we do not find that Gagnon was prejudiced when the trial court charged the jury on the lesser included crime of sodomy.

Violation of Rule 10.3 carries no express penalties,[1] although failure to adhere to the rule has been cited as justification for a trial court's refusal to give a later requested charge.[2] Gagnon argues that, if the State had requested a charge on sodomy in conformity with Rule 10.3, he could have made a tactical decision not to testify on his own behalf. Gagnon's defense to rape and aggravated sodomy was based on consent. He testified to conduct amounting to consensual sodomy. Perhaps he would not have testified if he had known that his own testimony would expose him to conviction of sodomy. But Gagnon was not harmed unless he reasonably could have expected that because the State failed to request a charge on sodomy before trial, the trial court would not charge the jury on the lesser included crime of sodomy.

A trial court, sua sponte, may charge a jury on a lesser included offense if the evidence justifies it.[3] The trial court need not inform

---

[1] *Ranson v. State*, 198 Ga. App. 659, 662 (8) (402 SE2d 740) (1991).

[2] See, e.g., *Temple v. State*, 238 Ga. App. 146 (3) (517 SE2d 850) (1999) (it was not error for the trial court to refuse to give charges on lesser included crimes where the requests for charges were not timely submitted under Rule 10.3); *Smith v. State*, 222 Ga. App. 366, 370 (5) (474 SE2d 272) (1996) (failure to give charge not error because request to charge not timely made under Rule 10.3).

[3] *Powell v. State*, 270 Ga. 327, 328 (2) (510 SE2d 18) (1998).

counsel in advance if it decides to make an unrequested jury charge.[4] Because the trial court has the inherent power to charge the jury on a lesser included crime, so long as the charge is supported by the evidence, it is neither error nor reasonably unexpected for the trial court to charge the jury on a lesser included crime solely because the charge was not requested at the commencement of trial. Furthermore, this court has held that it is not error for the trial court to give a charge authorized by the evidence, even though the charge was not requested in writing by the State at the commencement of trial as required by Rule 10.3.[5] Thus Gagnon was always subject to a charge on the lesser included offense of sodomy even though the State did not include it in its pre-trial request for charges. Gagnon's right to defend himself by choosing whether to testify, therefore, was not unduly prejudiced by the State's failure to adhere to Rule 10.3.

2. Gagnon also claims his conviction for sodomy violates the Georgia Constitution, based upon the Supreme Court of Georgia's decision in *Powell v. State.*[6] *Powell*'s holding, however, is very specific:

> We conclude that OCGA § 16-6-2, insofar as it criminalizes the performance of private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent, manifestly infringes upon a constitutional provision which guarantees to the citizens of Georgia the right of privacy.[7]

The evidence shows that Gagnon was not convicted for a "private, unforced, non-commercial" act of sexual intimacy. First, the lingerie shop was a public place.[8] The session room was subject to observation through a viewing hole in the door intended to be used by employees. So it is likely that the "conduct involved may be reasonably expected to be viewed by people other than members of the actor's family or household."[9] Second, although Gagnon maintains that the sexual acts were consensual, if the victim consented she did so only in exchange for money. The conviction of Gagnon of sodomy for a sex act in a public, commercial place is not prohibited by *Powell.*

3. Gagnon claims that the trial court erred by not charging the jury on the lesser included offense of reckless conduct.

---

[4] *Henson v. State*, 258 Ga. 600, 602 (5) (258 SE2d 806) (1988).

[5] *Ranson*, 198 Ga. App. at 662 (8), supra. See also *Johnson v. State*, 185 Ga. App. 505, 506 (1) (364 SE2d 893) (1988) (where there is any evidence, however slight, upon a particular point, it is not error to charge the law in relation to that issue).

[6] 270 Ga. 327, supra.

[7] (Citation and punctuation omitted.) Id. at 336.

[8] See, e.g., *Rushing v. State*, 133 Ga. App. 434, 435 (1) (211 SE2d 389) (1974) (massage parlor a public place).

[9] OCGA § 16-1-3 (15).

After brief deliberations, the jury returned to the court with several questions, including whether the charge of aggravated assault could be reduced to assault. Gagnon argues that the trial court should have instructed the jury on reckless conduct at that time. But Gagnon admits he never requested the court to give that charge. It is not error for a court to fail to instruct a jury on a lesser included offense without a written request,[10] and here there was no written or oral request.

4. Gagnon claims that the trial court erred when it did not grant his motion for a directed verdict at the close of evidence. We find that the evidence was sufficient to authorize the jury to convict on the charge of aggravated assault under the standard set forth in *Jackson v. Virginia*.[11] The victim testified that she feared for her life. Given that Gagnon was motioning and pointing the gun at her while she was dancing, that it was pointed at her head while they struggled for the weapon, and that the gun discharged, a reasonable jury could find that the victim was in reasonable apprehension of receiving a violent injury from a deadly weapon.

5. The jury asked the judge, "What is Aggravated Assault?" The judge then charged the jury on assault, aggravated assault, and the elements of assault and commented "That's aggravated assault." There is no merit in Gagnon's contention that the statement by the trial court either could be interpreted as a mandate to convict or confused the jury as to what constituted aggravated assault. We find that the charges on assault and aggravated assault were correct, and, in the context in which it was made, the comment by the court was neither a mandate to convict nor confusing.

6. In his final enumeration of error, Gagnon challenges the introduction into evidence of a knife and a pair of handcuffs, claiming that they were irrelevant and unduly prejudicial. Gagnon also claims that there was no evidence that these items were actually found on his person.

The police recovered the handcuffs, a knife engraved with Gagnon's initials, a "Members Only" card for the lingerie shop, and a bank withdrawal slip in the front doorway of the business. The location of the items, including the knife and the handcuffs, and that the items were found together indicate they belonged to Gagnon. Although Gagnon is correct that there was no testimony that he used or displayed the knife or the handcuffs, this court has upheld the admission of the accused's possessions as part of the circumstances surrounding the arrest.[12]

---

[10] *Hawkins v. State*, 267 Ga. 124, 125 (3) (475 SE2d 625) (1996).

[11] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[12] *Wilson v. State*, 222 Ga. App. 818, 819 (476 SE2d 97) (1996); *Evans v. State*, 209 Ga.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 10, 1999 —

*Michael D. Reynolds*, for appellant.

*J. Gray Conger, District Attorney, Patrick B. Moore, Assistant District Attorney*, for appellee.

App. 340, 342 (4) (433 SE2d 426) (1993).