## S11A1431. WILLIAMS v. THE STATE.

(722 SE2d 847)

NAHMIAS, Justice.

Appellant Jarnard Williams and co-defendant James Mitchell were indicted for the felony murder of Wymberly Baker, the aggravated assault of Donald Robinson, and two counts of possession of a firearm during the commission of a felony. Appellant was separately indicted for theft by receiving a Toyota Highlander. After a joint jury trial, Appellant and Mitchell were found guilty on all counts. We now affirm Appellant's convictions.[1]

1. Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. At about 5:00 p.m. on October 25, 2007, Baker, Robinson, Isaac Fitzgerald, and Tereen Graham were talking in front of Baker's house in Savannah, Georgia, when a stolen black Toyota Highlander with three or four people in it pulled up. Two men got out and said they were there to rob the victims, who began running. The two men then began shooting. Baker was fatally shot in the chest, and Robinson was shot in the arm. After Mitchell went through Baker's pockets, the two shooters jumped back in the SUV and fled the scene.

Shortly after the shootings, the police found the Highlander abandoned, with the doors open and the engine running. The two guns used in the shooting, a Tech-9 and a 9mm pistol, were later found near where the SUV was parked. An officer driving near the location of the SUV saw Appellant, who fit the description of one of the suspects and appeared out of breath, walking down the street. Appellant was detained, and a detective told the officer to interview him and then release him, which the officer did.

Venus McKinney, who has a child with Appellant, voluntarily went to the police station on the day of the crimes. She told a detective that the night before, Appellant and Chevis Borrum had come to her house in a black SUV; they drove around for a while; Appellant parked the vehicle on the street; he spent the night with her; and he had a 9mm gun. McKinney told the detective that Appellant left the house in the morning but came back and knocked

---

[1] The crimes occurred on October 25, 2007, and Appellant and Mitchell were indicted on April 2, 2008. The jury found them guilty on April 17, 2009. On April 22, 2009, the trial court sentenced Appellant to life in prison on the murder conviction, ten consecutive years on the aggravated assault conviction, two five-year consecutive terms on the firearm convictions, and ten years concurrent on the theft by receiving conviction. On May 6, 2009, Appellant filed a motion for new trial, which he amended on September 24, 2010. After a hearing, the trial court denied the motion on February 3, 2011. Appellant filed a timely notice of appeal, and the case was docketed for the September 2011 term of this Court and orally argued on September 12, 2011. We also decide Mitchell's appeal today. See *Mitchell v. State*, 290 Ga. 490 (722 SE2d 705) (2012).

on her window and asked her to hand him his gun, which she did. McKinney also said that the police had allowed Appellant to call her when he was detained and she had falsely told the officer that Appellant was with her at the time of the crimes. The detective testified that between the time of her statement and the trial, McKinney never told him that her story was untrue. At trial, however, McKinney recanted her statement, claiming that she gave the police false information because she became upset with Appellant after seeing him earlier on the day of the crimes with one of his old girlfriends.

Jamel Williams testified that he knows both Mitchell and Appellant because he sold them marijuana. On the day of the crimes, Mitchell, Appellant, and another man came to his house in a black SUV, and Jamel got in to make the transaction. Although Jamel testified at trial that he did not know if there were any weapons in the car and did not know the other man's name, the detective testified that, in a pre-trial statement, Jamel said that Mitchell had a Tech-9 and Appellant had a 9mm handgun at the time of the drug sale and that Chevis Borrum and Eric Brown were also in the SUV.

Borrum testified that Appellant was his "partner" and they had known each other about eight years. On the day of the crimes, Borrum said, he was walking with Appellant when they were stopped and questioned by a police officer. However, he claimed not to recognize the black Highlander and denied being in it that day, saying that he was out walking when he ran into Appellant on the street in the neighborhood where the SUV was found and they both live.

At trial, Fitzgerald identified Mitchell as one of the two shooters, but said that he could not identify the other assailant because the man was wearing a bucket hat and "kinda covering his face" with his shirt. On October 26 and December 20, 2007, the detective had shown Fitzgerald six-person photo lineups that included Appellant's photograph. In the October 26 lineup, Fitzgerald circled Appellant's photo but said he was not positive about the identification and wrote "a little bit" under the photo. The detective testified that Fitzgerald appeared scared and hesitant at that time. In the December 20 lineup, which used a clean copy of the same lineup card, Fitzgerald identified Appellant as one of the shooters without qualification. Fitzgerald also testified that he had been reluctant to tell the police who the shooters were because he was "real scared about what happened." He added that two or three months after the crimes, he saw Appellant at a bar, and Appellant had come over and stood behind him until he and his friends moved.

Although Graham and Robinson identified Mitchell as one of the shooters, neither could identify the second shooter. Robinson did

testify, however, that Mitchell had a Tech-9 and the other shooter used a 9mm gun.

The evidence in this case required the jury to determine the credibility of numerous witnesses and to resolve numerous conflicts and inconsistencies. These are decisions we rely on the jury to make. See *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009). We also note that the trial court, which sits as the "thirteenth juror" with respect to motions for new trial based on the weight of the evidence, found the evidence sufficient to support the convictions. When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above, while not overwhelming, was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that trial counsel was constitutionally ineffective for several reasons. To prevail on these claims, Appellant

> must show that his trial counsel provided deficient performance and that, but for that unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984). In examining an ineffectiveness claim, a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."

*Watkins v. State*, 289 Ga. 359, 362 (711 SE2d 655) (2011) (citation omitted).

(a) Appellant claims that Fitzgerald's December 20, 2007, out-of-court identification of Appellant was impermissibly suggestive and that trial counsel was therefore ineffective in failing to move to exclude it. " 'When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion.' " *Biggs v. State*, 281 Ga. 627, 631-632 (642 SE2d 74) (2007) (citation omitted). Appellant failed to make such a showing.

> "An unduly suggestive procedure is one which leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is equivalent to the

authorities telling the witness, 'This is our suspect.' " Where the identification procedure is not unduly suggestive, it is not necessary to consider whether there was a substantial likelihood of irreparable misidentification.

*Williams v. State*, 286 Ga. 884, 888 (692 SE2d 374) (2010) (citations omitted).

Applying this standard, we conclude that the photo lineup shown to Fitzgerald on December 20 — which was the exact same lineup shown to him on October 26, without the markings he made on the first copy — was not unduly suggestive. Appellant does not contend that the composition of the photo lineup was suggestive, and the record confirms that the lineup featured six African-American males of similar appearance. Instead, Appellant argues that because Fitzgerald wrote "a little bit" under Appellant's photo on the October 26 array, showing him the same photo array on December 20 was like the police saying, "This is our suspect." However, Fitzgerald was not told that he had identified the suspect after the tentative first identification, and he was not shown the lineup again for almost two months. See *United States v. Carter*, 410 F3d 942, 949 (7th Cir. 2005) (explaining that where a "substantial passage of time" like three months passed between two photo lineups, "it is unlikely that (the eyewitness) was influenced by the earlier photograph, let alone that it led to misidentification"). Moreover, the second photo lineup was identical to the first, meaning that none of the six men in the second lineup was emphasized more than another. Thus, while Fitzgerald testified that he recognized the two lineup cards as identical, he would have had no reason to believe that the photo under which he wrote "a little bit" on the first array was the "suspect," as he arguably might have if Appellant's photo were the only one in both lineups or if the police had shown him the lineup with his notation again. See *United States v. Daily*, 488 F3d 796, 804 (8th Cir. 2007) (holding that a second photo lineup was not impermissibly suggestive, in large part because the arrays were the same, "not two separate photo arrays where the defendant was the only person appearing in both arrays"). Compare *Foster v. California*, 394 U. S. 440, 443 (89 SC 1127, 22 LE2d 402) (1969) (holding that a second lineup was impermissibly suggestive for several reasons, including that the "[p]etitioner was the only person in [the second] lineup who had also participated in the first lineup").

Accordingly, the admission of this eyewitness identification evidence did not violate constitutional due process, and the weight to be given Fitzgerald's identification of Appellant as the second shooter — at first tentative, then positive, and then negative at trial — was for the jury to decide. See *Perry v. New Hampshire*, ___ U. S.

___ (132 SC 716, 181 LE2d 694) (2012). Because Appellant has not shown that Fitzgerald's December 20 photo lineup identification of him would have been suppressed had trial counsel challenged it, he has failed to show that trial counsel provided deficient performance in this respect. See *Biggs*, 281 Ga. at 631-632.

(b) Appellant contends that trial counsel was ineffective in failing to call two witnesses to testify for him at trial. Appellant says the witnesses would have impeached Venus McKinney's statement to the police that, on the night before the crimes, Appellant came to her house in a black SUV and had a 9mm gun.

Both witnesses testified at the hearing on Appellant's motion for new trial. Nicholas Sterling testified that he and Appellant were friends in October 2007; he remembered Appellant saying that he had been stopped by the police one day while walking; and the night before that conversation, he and Appellant were playing cards at a friend's house. Sterling did not specify, however, when the card game started or ended. Sheila Williams, who is Appellant's aunt, testified that he spent the night at her house "the week" beginning October 24, 2007, and claimed that he "was there the whole time." She gave no specific testimony about the night before the shootings.

We need not decide whether trial counsel performed deficiently in failing to call Sterling and Sheila Williams at trial, because there is not a reasonable probability that the outcome of the trial would have been different had they testified as they did at the post-trial hearing. See *Watkins*, 289 Ga. at 362. These were not alibi witnesses, as they did not claim that Appellant was with them at the time of the crimes.

As for impeachment of McKinney, Sterling's testimony is not clearly inconsistent with McKinney's evidence, and Williams's testimony is not irreconcilably inconsistent. Indeed, Sterling and Williams are somewhat contradictory, each claiming that Appellant was with him or her on the night before the crimes. Moreover, the most significant points of McKinney's evidence were that she saw Appellant with a 9mm gun in a black SUV within a day of the shootings and that he asked her to provide a false alibi to the police, not whether he spent the whole night with her. Sterling and Williams did not directly contradict that evidence, nor did they challenge the credibility of any other witness. We note in this respect that, contrary to Appellant's contention, there was evidence other than McKinney's police statement associating him with the black SUV and a 9mm gun. Finally, McKinney's credibility was impeached in other ways at trial, including by her recantation on the witness stand.

For these reasons, this claim of ineffective assistance also fails.

(c) Appellant contends that trial counsel was ineffective in failing to object to the State's oral requests to charge the jury on the testimony of a single witness and parties to a crime. Appellant argues that the State's requests were subject to objection under Uniform Superior Court Rule 10.3 because they were not in writing, were made after the close of evidence, and addressed points that the State could have anticipated.[2] Even assuming, however, that the trial court could have refused to give the State's requested charges if trial counsel had objected, Appellant has failed to explain how, if those charges had not been given, there is a reasonable probability that the outcome of the trial would have been different. Moreover, both of the requested charges were supported by the evidence and could have been given sua sponte by the trial court. See *Gagnon v. State*, 240 Ga. App. 754, 756 (525 SE2d 127) (1999) (holding that "it is not error for the trial court to give a charge authorized by the evidence, even though the charge was not requested in writing by the State at the commencement of trial as required by Rule 10.3").

Likewise, Appellant's ineffectiveness claim based on trial counsel's failure to request a charge that hearsay is without probative value has no merit. Even had such a charge been given, there is no reasonable probability that the trial would have had a different result.

(d) At trial, after a recess during Isaac Fitzgerald's testimony, the prosecutor told the court that during the recess, Chevis Borrum, who was scheduled to be a State's witness, had pointed a finger at Fitzgerald and two other witnesses and made a noise like "pow-pow-pow." When questioned by the court outside the presence of the jury, Borrum denied making any gestures toward Fitzgerald; the court indicated its disbelief of that testimony and ordered Borrum to be detained until the end of the trial. When the jury returned to the courtroom, the State resumed its direct examination of Fitzgerald and had him testify about the incident. When the State later called Borrum as a witness, it also questioned him about the incident, and Borrum again denied making the threat. During closing, the prosecutor argued, "I guess [Appellant's] got more important, you know, people or friends or something working for him, because all the witnesses with regard to him are backing off." The prosecutor concluded her closing with, "And just like Mr. Borrum informed Mr.

---

[2] USCR 10.3 states:
   All requests to charge shall be numbered consecutively on separate sheets of paper and submitted to the court in duplicate by counsel for all parties at the commencement of trial, unless otherwise provided by pre-trial order; provided, however, that additional requests may be submitted to cover unanticipated points which arise thereafter.

Fitzgerald out in the hallway, he said, 'Pow, pow, pow,' and that's exactly what you get from these guys, from [Appellant], if you piss him off." Trial counsel did not object to any of this.

In his motion for new trial, Appellant asserted that trial counsel was ineffective in failing to object to and move to exclude the testimony regarding Borrum's threatening conduct. Although Appellant noted that the prosecutor relied on Borrum's threat in closing argument, Appellant did not assert that trial counsel was ineffective in failing to object to the argument. Similarly, at the motion for new trial hearing, trial counsel was asked why he did not move to exclude the testimony about Borrum's threat, but he was not asked about the closing argument, and Appellant never argued that trial counsel was ineffective in failing to object to the closing. On appeal, Appellant enumerates as error that trial counsel was ineffective in "[f]ail[ing] to move to exclude, or otherwise object to, testimony regarding the conduct of the State's witness Chevis Borrum with regard to other witnesses for the State, particularly Isaac Fitzgerald, during a recess."

The trial court has discretion to admit evidence of a threat to a witness that is not connected to the defendant if the evidence is relevant to explain the witness's "reluctant conduct on the witness stand." *Coleman v. State*, 278 Ga. 486, 488 (604 SE2d 151) (2004). See also *United States v. Doodles*, 539 F3d 1291, 1296 (10th Cir. 2008) (holding that a witness's testimony that he feared retaliation from members of the defendant's gang was admissible to explain his inconsistent statements). Compare *Kell v. State*, 280 Ga. 669, 671-672 (631 SE2d 679) (2006) (holding such evidence inadmissible where the threat was not connected to the defendant or to any influence on the witness's testimony). Here, the evidence of Borrum's threatening gesture to Fitzgerald, which the prosecutor did not connect to Appellant during the questioning of Fitzgerald or Borrum, was admissible to explain Fitzgerald's inconsistent statements and reluctance on the witness stand, which occurred both before and after the threat by Borrum. See *Coleman*, 278 Ga. at 488. The evidence was also admissible to suggest Borrum's bias in favor of Appellant and thus to impeach the portions of Borrum's testimony that were favorable to Appellant. See *Manley v. State*, 287 Ga. 338, 340 (698 SE2d 301) (2010) (explaining that a witness's bias is always relevant for impeachment purposes).

As for the prosecutor's closing argument connecting Appellant to Borrum's threatening conduct, Appellant did not raise trial counsel's failure to object to the closing argument as part of his ineffective assistance claim in the trial court and likewise does not enumerate that issue on appeal. It is therefore waived. See *Collier v. State*, 288 Ga. 756, 758 (707 SE2d 102) (2011) (holding that an ineffectiveness of trial counsel claim not raised as part of a motion

for new trial filed by new appellate counsel is waived on appeal).

Even if Appellant had properly raised the issue, however, it would not require reversal. Prosecutors have " 'wide latitude to argue inferences from the evidence.' " *Arrington v. State*, 286 Ga. 335, 347 (687 SE2d 438) (2009) (citation omitted). Borrum testified that he had been Appellant's "partner" for eight years; Jamel Williams stated that Borrum was with the armed Appellant in the black SUV during a drug deal on the day of the shootings; and Borrum admitted that he was with Appellant on the street near the abandoned SUV shortly after the crimes. Also, Fitzgerald testified that Appellant himself, before his arrest, had come over and stood right behind Fitzgerald in a bar, leading Fitzgerald and his party to move. Thus, it was not entirely unreasonable to suggest a connection between Appellant and Borrum's threat to Fitzgerald. Moreover, the jury was properly instructed that the prosecutor's arguments were not themselves evidence, and even if an objection had been made, sustained, and a cautionary instruction given, we cannot say that it is reasonably probable that the jury's verdict would have been different.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 6, 2012 —
RECONSIDERATION DENIED FEBRUARY 27, 2012.

*Steven L. Sparger*, for appellant.
*Larry Chisolm, District Attorney, Melanie Higgins, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.
*Perry & Walters, George P. Donaldson III, James C. Bonner, Jr., J. Scott Key, Marcia G. Shein*, amici curiae.