[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10988
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00292-LGW-GRS


JARNARD M. WILLIAMS,

Petitioner-Appellee,

versus

STANLEY WILLIAMS,
Warden,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(November 8, 2017)

Before MARTIN, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

The State of Georgia appeals the district court's partial grant of Jarnard M. Williams' petition for writ of habeas corpus.  We affirm.

## I. BACKGROUND

On October 25, 2007, Wymberly Baker, Donald Robinson, Isaac Fitzgerald, and Tereen Graham were in front of Baker's house when a stolen black Toyota Highlander pulled up.[1]  Two men got out and said they were there to rob the victims.  The victims started running and the two men began shooting.  Baker was fatally shot in the chest; Robinson was shot in the arm.

On October 26, 2007, a detective showed Fitzgerald a six-person photo lineup that included Williams' picture.  Fitzgerald circled Williams' picture but said he was not positive about the identification; he wrote "a little bit" under the picture.  *Williams v. State*, 722 S.E.2d 847, 849, 290 Ga. 533, 534 (2012).  On December 20, 2007, a detective once again showed Fitzgerald a six-person photo lineup; Fitzgerald identified Williams as one of the shooters without qualifications.

### A. State Proceedings

Williams and his codefendant, James Mitchell, were subsequently indicted for the felony murder of Baker, two counts of possession of a firearm during the commission of a felony, and aggravated assault of Robinson; Williams also was indicted for theft by receiving stolen property.  Initially, at trial, "Fitzgerald

---

[1] For a full recitation of the facts, see *Williams v. State*, 722 S.E.2d 847, 290 Ga. 533 (2012).

2

identified Mitchell as one of the two shooters, but said that he could not identify the other assailant because the man was wearing a bucket hat and 'kinda covering his face' with his shirt." *Id.* However, Fitzgerald then testified that he had identified Williams as the other shooter during photo lineups. Fitzgerald testified that he "could identify a piece" of the other shooter and that person was Williams. R. at 1237. On cross-examination, Fitzgerald admitted to having an attorney because there was a case pending against him. Fitzgerald denied cooperating with the State "in hopes of getting [a] benefit in [his] pending felony case." R. at 1256. He testified that he did not "expect the State to help [him] out with [his case] at all." R. at 1258. On redirect, Fitzgerald testified that the prosecutor, Melanie Higgins, was not handling the case against him. Fitzgerald had not had any discussions with her about his case; no plea offers had been extended in his case. On re-cross, Fitzgerald testified that he was unaware if the prosecutor in his case knew that he was testifying that day.

On appeal, Williams alleged he had received ineffective assistance of trial counsel; among other arguments, Williams argued counsel was ineffective for failing to exclude or object to Fitzgerald's testimony and out-of-court eyewitness identification. The Supreme Court of Georgia affirmed Williams' convictions and sentence; it found all four claims of ineffective assistance were meritless and the

evidence was sufficient to authorize a rational jury to find Williams guilty beyond a reasonable doubt. *Williams*, 722 S.E.2d 847, 290 Ga. 533.

Williams filed a state habeas corpus petition in January 2013 and raised five claims, including that he was denied a fair trial based on the prosecutor's concealment of impeachment evidence and that he was denied a fair trial based on the "unprofessional errors" of his trial counsel. R. at 144-49. At the state habeas evidentiary hearing, Williams' trial counsel and the prosecutor, Higgins, testified. Higgins testified that Fitzgerald was "one of the few witnesses in the case that was able to identify both defendants." R. at 304. Higgins met with Fitzgerald once before Williams' trial to discuss his testimony. Higgins did not extend any plea offers to Fitzgerald, because another prosecutor, Ann Elmore, was handling his case. Higgins told Fitzgerald that, "if he showed up and testified, that [she] would tell Ms. Elmore that he was helpful to the State and that she could consider that in making a plea offer to him." R. at 306. When asked if she had "offer[ed] him anything for [his] testimony," Higgins answered, "No, absolutely not." R. at 306. After Williams' trial, Higgins told Elmore that Fitzgerald had testified at trial, that it had been under adverse circumstances because Fitzgerald was threatened, and that she could consider that in making a plea offer to him.

In an e-mail from Higgins to Elmore, Higgins explained that Fitzgerald testified against Williams. She noted that, while Fitzgerald was waiting to testify,

4

"he was threatened by Williams' friend." R. at 1953. She noted that Fitzgerald had provided a "good picture of what had occurred and who was involved," that Fitzgerald was her first witness, and that she did not "think there would have been a conviction against Williams had [Fitzgerald] not testified." R. at 1953. In an affidavit, Elmore explained that, in response to Higgins' e-mail, she formulated a plea offer and conveyed it to Fitzgerald. Fitzgerald accepted the plea offer.

The state habeas court issued an opinion regarding Williams' claims. It concluded that there was no deal, formal or informal, for Fitzgerald's testimony.

> The mere fact that Fitzgerald knew that Ms. Higgins would recommend to Ms. Elmore that she consider Fitzgerald's favorable testimony in making a plea recommendation is not material in that there is no reasonable probability that the jury would have found Williams not guilty if the jury had known about Ms. Higgins' promised recommendation.

R. at 1985. Additionally, the state habeas court concluded that there were no "unprofessional errors" on the part of Williams' trial or appellate counsel. R. at 1986. The Supreme Court of Georgia subsequently summarily denied Williams a certificate of probable cause to appeal the denial of habeas corpus.

**B. Federal Proceedings**

Williams then filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 and raised numerous claims, only two of which are relevant to this appeal. Williams argued that he was denied his due process rights when the prosecution failed to disclose material impeachment evidence (Claim 2) and that the

5

cumulative effect of the prosecution's misconduct and his counsel's deficient performance denied him a fair trial (Claim 5).  Specifically, Williams contended the prosecutor violated her *Brady*[2] duty by failing to disclose a cooperation agreement with Fitzgerald.

A magistrate judge issued a report and recommendation ("R&R").  The judge noted that Williams had alleged that: (1) a hidden deal had been cut; and (2) it made a material difference, and concluded that the state habeas court "nonsensically mishmashed those two concepts to find that Higgins had cut no leniency deal with Fitzgerald *because* it was not material."  *Williams v. Williams*, 232 F. Supp. 3d 1318, 1327 (S.D. Ga. 2017).  The magistrate judge concluded that there was a deal and it was material.  Relying on *Wearry v. Cain*, 136 S. Ct. 1002 (2016), the judge noted that generalized assurances from a police officer, let alone the prosecutor, were enough to trigger *Brady*.  The judge stated that to conclude there was no deal because Higgins omitted the "leniency" adjective, was to "enable cynically manipulative semantics to trump reality."  *Williams*, 232 F. Supp. 3d at 1329.  The judge further concluded that "it cannot reasonably be questioned that Fitzgerald's testimony was material," noting that Higgins had admitted there would not have been a conviction against Williams absent Fitzgerald's testimony.  *Id.*

---

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).

Regarding Claim 5, the magistrate judge concluded that, when Williams' attorney cross-examined Fitzgerald on the possibility of a deal with the prosecution and he denied the existence of one, Higgins had a duty to correct Fitzgerald's misleading testimony; Higgins instead misleadingly rehabilitated Fitzgerald on redirect.  At the state habeas hearing, Higgins continued to insist that she extended Fitzgerald no formal plea offer, despite clearly established law requiring disclosure of any understanding, formal or informal.  The magistrate judge concluded that Higgins' "dissembling minimizations" at the state habeas hearing perpetuated the State's misconduct.  *Id.* at 1337.

> By showing that Fitzgerald misled the jury under oath, that Higgins violated her *Brady* duty, and that she concocted a blatantly bogus semantic distinction to cover it up, Williams has demonstrated *continuing* (through the state's own collateral appeal channel) government misconduct sufficient to support § 2254 relief per the § 2254(d)(1) (law prong) error in the state habeas court's ruling.

*Id.* at 1338.

The district court adopted the R&R and ordered Williams' convictions be vacated and that he be released or retried within 120 days.  On appeal, the State argues that the district court erred by granting Williams habeas relief as to his *Brady* claim and as to his prosecutorial cumulative-error claim.

## II. DISCUSSION

We review de novo a district court's grant of a writ of habeas corpus. *Muhammad v. Sec'y, Fla. Dep't of Corr.*, 733 F.3d 1065, 1071 (11th Cir. 2013).

7

As amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d) prohibits federal courts from granting habeas relief on claims previously adjudicated on the merits in state court unless the state-court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.  28 U.S.C. § 2254(d)(1)-(2).

A state-court decision is "contrary to" clearly established federal law if the state court applied "a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850 (2002).  Clearly established federal law consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000).  A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or

8

unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407, 120 S. Ct. at 1520. The "unreasonable application" inquiry focuses on whether the state court's application of Supreme Court precedent was "objectively unreasonable," which requires the state-court decision to be more than incorrect or erroneous. *Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1284 (11th Cir. 2016).

The deferential standard of § 2254(d) applies regardless of whether the state-court decision is unaccompanied by an opinion explaining the reasons relief has been denied. *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), *cert. granted sub nom. Wilson v. Sellers*, 137 S. Ct. 1203 (2017). When the last adjudication on the merits provides a reasoned opinion, federal courts evaluate the opinion. 28 U.S.C. § 2254(d). When the last adjudication on the merits provides no reasoned opinion, a petitioner's burden under § 2254(d) is to show there was no reasonable basis for the state court to deny relief. *Wilson*, 834 F.3d at 1235. A habeas court must determine what arguments or theories supported or could have supported the state court's decision; then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Id.*

Because appellate courts may affirm for different reasons, federal courts should not, under the deferential standard of review established in § 2254, assume that the summary affirmances of state-appellate courts adopt the reasoning of the court below. *Id.* at 1238. AEDPA's requirements reflect a presumption that state courts know and follow the law. *Id.* AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt, even when the opinion of a state court contains flawed reasoning. *Id.*

Under *Brady v. Maryland*, the prosecution is required to disclose to the defense evidence favorable to the accused if the evidence is material to guilt or punishment. 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963). Evidence that would impeach government witnesses also falls into this category. *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985). To obtain relief on a *Brady* claim, the petitioner must establish (1) the government possessed evidence favorable to him, (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence, (3) the government suppressed the favorable evidence, and (4) the evidence was material. *Ponticelli v. Sec'y, Fla. Dep't of Corr.*, 690 F.3d 1271, 1292 (11th Cir. 2012). Evidence would be material if it is reasonably probable that a different outcome would have resulted if the

government had disclosed the evidence.  *Id.*  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

In *Bagley*, the government had given the defense affidavits from its "two principal witnesses" attesting that they had not been given any rewards or promises of reward.  473 U.S. at 670, 105 S. Ct. at 3377.  Even though the defense asked for information about any deals, promises, or inducements, the government did not disclose that it had signed a contract to pay the two witnesses as "vendors" an amount described in the contract as "a sum commensurate with services and information provided"; they expected to be paid and were paid.  *Id.* at 671-72, 105 S. Ct. at 3377-78.  The Supreme Court concluded that the government's failure to disclose the evidence to the defense deprived it of the opportunity to impeach the witnesses by showing their bias or interest.  *Id.* at 676, 105 S. Ct. at 3380.  The Court recognized that the "possibility of a reward gave [the two witnesses] a direct, personal stake in [Bagley's] conviction."  *Id.* at 683, 105 S. Ct. at 3384.

Here, the district court did not err by granting Williams habeas relief as to his *Brady* claim as no reasonable basis existed to deny him relief.[3]  The state habeas court's failure to extend *Brady* and *Bagley* to the context of this case was objectively unreasonable.  The prosecution failed to disclose impeachment

---

[3] We note that the district court erred by relying on *Wearry* because it was published after Williams' state habeas proceedings were adjudicated and therefore was not "clearly established" when the state habeas court issued its opinion.  *See Williams*, 529 U.S. at 412, 120 S. Ct. at 1523.

11

evidence favorable to Williams during his trial, specifically Higgins' promise to talk to the prosecutor handling Fitzgerald's case if he testified against Williams. Because *Brady* applies to the suppression of favorable impeachment evidence and does not discriminate as to the form, it is irrelevant whether Higgins' promise constituted a "deal." *See Bagley*, 473 U.S. at 676; *Brady*, 373 U.S. at 87. The State's failure to disclose this impeachment material is sufficiently egregious to undermine confidence in the outcome. *See Ponticelli*, 690 F.3d at 1292

The withheld evidence was material as it was reasonably probable that a different outcome would have resulted if the prosecution had disclosed its promise to Fitzgerald. Fitzgerald's testimony played a key role in obtaining Williams' conviction and Higgins admitted as much. Fitzgerald's testimony was not "merely cumulative to that presented at trial" as he identified Williams at the scene as part of the shooting. *See id.* at 1282. Williams attempted to impeach Fitzgerald on cross-examination and was unable to do so because the prosecution failed to disclose the promise it had made to Fitzgerald, Fitzgerald denied any promise, and Higgins rehabilitated Fitzgerald on redirect. Thus, the State's failure to disclose the impeachment material was sufficiently egregious to undermine confidence in

the outcome, *see id.* at 1292, and the district court did not err by granting Williams

habeas relief on his *Brady* claim.[4]

    **AFFIRMED.**

---

[4] Because Williams is due habeas relief as to his *Brady* claim, we need not address whether the district court erred by granting Williams habeas relief as to his cumulative-error claim.