**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 27, 2013**

# In the Court of Appeals of Georgia

A12A2455. HINES v. THE STATE.

MCMILLIAN, Judge.

Bridgett Marvette Hines appeals the denial of her motion for new trial following her conviction by a jury of armed robbery, aggravated assault,[1] concealing the identity of a motor vehicle, and two counts of contributing to the delinquency of a minor. Hines raises 16 enumerations of error on appeal, and after considering the parties' arguments, the applicable law and the record, we affirm for the reasons set forth below.

---

[1] The trial court merged the aggravated assault charge with the armed robbery charge for sentencing.

Viewed in the light most favorable to the verdict,[2] the evidence at trial showed that sometime prior to January 1, 2009, Ricky Timmons and Hines' co-defendant, Geoffrey Jupiter, decided to commit a robbery. On the night of January 1, Jupiter, Hines and her minor son[3] drove Hines' son-in-law's Mercury Marquis to Timmons' house, where they picked Timmons up and drove to the Lucky convenience store in Clayton County. Hines was driving, and in her original handwritten statement to police, she stated that Jupiter had called her earlier and offered to pay her to drive. On the way to the store, Hines tried to talk to Timmons about the robbery, but he did not really talk about it. When they arrived at the store sometime around 10:30 to 11 p.m., Hines and her son went inside for approximately five minutes. They returned to the car, and Hines drove to a nearby area where, according to Timmons, Hines instructed her son to get out of the car and remove the car tag. When he had done so, Hines drove back to the Lucky store and parked at the far side, away from the store. Hines then handed Timmons a gun , and Timmons and Jupiter, each carrying a gun, got out of the car, went inside the store, pointed their guns at the clerk and left the store with money and cigars. When they returned, Hines drove away.

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] Hines testified that her son was 12 years old at the time of the incident.

Unbeknownst to Hines and the others, however, Officer Andrew Hammond of the Jonesboro Police Department was parked "a couple [of] football fields" away, while working speed enforcement. From this position, he had a view of most of the Lucky store and its parking lot , and he saw a Mercury Marquis go through the parking lot and stay for a minute or so. Then, it left the lot and pulled across the street into a parking space at another business. The car sat there for a minute or two and then returned to the Lucky store, driving "really slowly" across the parking lot to one of the entrances to the lot, where it stopped and the lights were turned off. Jonesboro Police Officer Mark Carpenter pulled into the Lucky store a short time later as part of his regular patrol. He saw the car parked in a far corner of the lot in a dark area.

A few minutes later, both officers saw two males run in what Carpenter described as "a full sprint" across the parking lot and jump in the car. The car pulled out of the parking lot, without its lights on, at a high rate of speed. Hammond said that it appeared as if the driver put the car in drive and "stomped the gas," because "it shot out of the parking lot very quickly." Carpenter immediately began following the car, with Hammond behind him, and they both noticed that the car's license plate was missing.

After the officers activated their blue lights, Hines stopped the car. Timmons and Jupiter jumped out and ran. Hammond apprehended Timmons near the scene, but Jupiter escaped.[4] Hines and her son stayed in the car, and Carpenter discovered a handgun under the driver's seat in the rear passenger area at Hines' son's feet. He also discovered a BB gun laying outside the car near the front passenger door, along with a mask. Inside the car, Carpenter found cigars and approximately $2,338 in cash, laying all over the front passenger seat. He also located $448 in cash stuffed down the sleeve of Hines' son's jacket. Carpenter found the car's license plate in the middle of the backseat between where the two backseat passengers, Timmons and Hines' son, had been sitting.

Hines testified and denied any prior knowledge of the robbery. According to Hines, she picked her son up that night from his Christmas visit with his father, and they retrieved the $250 the father paid her in monthly child support from an ATM. She said that as her son was putting his things away in the trunk, he noticed that the car tag was hanging by one screw, so he removed it and put it in the back window of the car. But Hines' statement to police indicates that the tag was removed after they arrived at the Lucky store that night.

---

[4] Jupiter later turned himself in to police.

Hines testified that Jupiter called her after she picked up her son and told her that she could play the slot machine at the Lucky store for money because the people there knew him. Hines wanted to use some of her child support money to play the game. When she arrived to pick up Jupiter before heading to the store, he told her that they needed to get Timmons first, so they picked up Timmons and went to the Lucky store. Hines and her son went inside, while Timmons and Jupiter waited in the car. She bought her son an ice cream[5] and asked if she could play the game for money, but the clerk said they could not. They then left the store and returned to the car.

After they pulled out of the parking lot, Hines said that Timmons wanted some cigars, so she turned around and went back to the store. Timmons and Jupiter went inside while Hines and her son sat in the car. The men came running out of the store and got in the car. Hines testified that she did not see any weapons and did not suspect anything at that time, although her handwritten statement appears to indicate that she saw a gun before the robbery when Jupiter and Timmons got out of the car to go into the store. She denied handing Timmons a gun. As they drove away, they noticed a car following them, and when Timmons identified it as a police car, Hines

---

[5] Prior to Hines' testimony, the store clerk testified that a 12-year-old boy came into the store alone and bought an ice cream that night before the robbery. He did not remember that a woman was with him.

said that he removed the tag from the Marquis' back window. Hines immediately stopped when the police turned on their lights. Timmons and Jupiter began throwing money out of their coat pockets, then jumped out of the car. Hines said she did not know that her son had any money in his jacket, but speculated that he might have picked up some of the money that was scattered all over the car.

1. Hines asserts that the evidence was insufficient to support her convictions for armed robbery, contributing to the delinquency of a minor and concealing the identity of a motor vehicle, and thus she contends that the trial court erred in denying her motion for directed verdict. We disagree.

> On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence. Further, we neither resolve conflicts in the evidence nor assess witness credibility, but merely determine the legal sufficiency of the evidence. When an appellant challenges the sufficiency of the evidence to uphold [her] conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Punctuation and footnote citations omitted; emphasis in original.) *Jordan v. State*, __ Ga. App. __ (Case No. A12A2286, decided March 11, 2013). "The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that

for reviewing the sufficiency of the evidence to support a conviction." (Citation omitted.) *Pippins v. State,* 263 Ga. App. 453, 453 (1) (588 SE2d 278) (2003).

And although the evidence did not establish Hines' direct participation in the crime of armed robbery,

> [a] participant to a crime may be convicted although he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime.

(Punctuation, footnote citation and emphasis omitted.) *Jordan v. State,* 281 Ga. App. 419, 422 (1) (636 SE2d 151) (2006). See also OCGA § 16-2-21. The question of whether Hines was a party to the armed robbery in this case was for the jury to resolve. *Buruca v. State,* 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006).

Further, the testimony of a single witness is generally enough to establish a fact, unless the witness, like Timmons, is an accomplice to the crime, in which case such testimony must be corroborated. See OCGA § 24-4-8. Although

[a] defendant may not be convicted on the uncorroborated testimony of an accomplice[,] . . . only slight evidence of a defendant's identity and participation from an extraneous source is required to corroborate the accomplice's testimony and support the verdict. Sufficient corroboration may consist of either direct or circumstantial evidence which connects the defendant with the crime, tends to show his [or her] participation therein, and would justify an inference of the guilt of the accused independently of the testimony of the accomplice.

(Citations omitted.) *James v. State*, 316 Ga. App. 406, 408 (1) (730 SE2d 20) (2012). Even "[t]he accused's own statement can serve to corroborate his accomplice's inculpatory testimony." (Citations and punctuation citations omitted.) Id. at 408-409 (1). And "whether the State presents sufficient corroboration of the accomplice's testimony is peculiarly a matter for the jury to determine." (Citation and punctuation omitted.) *Steed v. State*, 273 Ga. App. 845, 848 (2) (616 SE2d 185) (2005).[6]

(a) The evidence was sufficient to support Hines' conviction as a party to the crime of armed robbery. More than slight independent evidence – including Hines'

[6] The law regarding the sufficiency of circumstantial evidence does not apply in this case because Hines' convictions were supported by both direct and circumstantial evidence. See *State v. Canup*, 300 Ga. App. 678, 682 (2), n. 3 (686 SE2d 275) (2009) (The "reasonable hypothesis" rule codified in OCGA § 24-4-6 "applies only when the evidence against the accused was *entirely* circumstantial.") (citation and punctuation omitted; emphasis in original).

own statement, the officers' testimony and the evidence found in the car – corroborated Timmons' version of events. And "the fact that [Hines herself] testified at trial to a different version of events does not change the result; the jury here was entitled to disbelieve [Hines'] version of the facts." (Citation and punctuation omitted.) *Feldman v. State*, 282 Ga. App. 390, 391 (638 SE2d 822) (2006). Her testimony, in fact, contradicted portions of her earlier statement to police, and the jury was entitled to discredit her attempts to explain these discrepancies.

(b) The evidence was also sufficient to support Hines' convictions for concealing the identity of a car under OCGA § 40-2-7. Timmons testified that Hines directed her son to remove the car tag before they returned to the store, and this testimony was corroborated by Hines' statement to police that the tag was removed after they went to the store as well as the tag's presence on the backseat of the car.

(c) The same evidence supports Hines' conviction of contributing to the delinquency of her minor son by knowingly and willfully encouraging him to remove the car's tag to conceal its identity.

The jury also was authorized by the evidence to find that Hines was guilty beyond a reasonable doubt of the second count of contributing to the delinquency of a minor by conspiring with her son to commit armed robbery. See OCGA § 16-12-1

9

(b)(4). "Conduct which discloses a common design, even without proof of an express agreement between the parties, may establish a conspiracy." (Citation omitted.) *Heard v. State*, 287 Ga. 554, 559–560 (5) (697 SE2d 811) (2010). "Presence, companionship and conduct before and after the commission of the alleged offenses may be considered by the jury and are circumstances which may give rise to an inference of the existence of a conspiracy." (Citations and punctuation omitted.) *Burnette v. State*, 241 Ga. App. 682, 683–684 (1) (527 SE2d 276) (1999). The jury was authorized to conclude that Hines involved her son in such conspiracy by taking him into the store to check it out before the robbery and by directing him to remove the car tag before they returned to the store to commit the robbery. Moreover, her son was discovered after the crime with a gun at his feet and a portion of the proceeds of the robbery in his jacket.

Accordingly, the trial court properly denied Hines' motion for directed verdict.

2. Hines asserts that the trial court erred in denying her motion to strike Juror Larson on the ground that she was P.O.S.T. certified. She further asserts that the trial court abused its discretion in removing Juror Vuong from the jury because he was distracted by pre-existing business concerns.

(a) "Whether to strike a juror for cause lies within the sound discretion of the trial court." (Citation omitted.) *Thomas v. State*, 314 Ga. App. 124, 127 (3) (723 SE2d 5) (2012). "An appellate court should not substitute its own finding for that of the trial court, since it must pay deference to the trial court's determination. This deference encompasses the trial court's resolution of any equivocations and conflicts in the prospective jurors' responses on voir dire." (Citation and punctuation omitted.) Id.

Voir dire was not transcribed, but counsel for both Hines and Jupiter put the basis for their motions to strike Juror Larson on the record. Jupiter's attorney asserted that Juror Larson testified that she was a P.O.S.T. certified peace officer. But the trial court corrected counsel's description of the juror's testimony, noting that she testified that she was a former corrections officer, not a current peace officer and that she worked in private security. The trial court said that Juror Larson testified that she had no arrest powers, although she retained her P.O.S.T. certification.

Although Hines asserts that the trial court abused its discretion in failing to strike Juror Larson, the Supreme Court of Georgia has already decided this issue unfavorably to Hines, holding that a trial court does not err

11

by failing to excuse a member of the jury pool who was certified as a Georgia Peace Officer. The prospective juror was working as a security guard at a convention center. In order to be subject to dismissal for cause, a member of the venire who is a law enforcement officer must be a full-time sworn police officer with arrest powers.

(Citation omitted.) *Robinson v. State*, 278 Ga. 836, 838 (4) (607 SE2d 559) (2005). See also *Prince v. State*, 277 Ga. 230, 235 (3) (587 SE2d 637) (2003).

(b) Hines also asserts that the trial court erred in dismissing Juror Vuong because he was distracted by his need to make a flight to St. Louis on the fifth day of trial. Under OCGA § 15-12-172,

[i]f at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, *upon other good cause shown* to the court is found to be unable to perform his duty, or is discharged *for other legal cause,* the first alternate juror shall take the place of the first juror becoming incapacitated.

 (Emphasis supplied). "The trial court must exercise its discretion in making the substitution, and is free to do so even after deliberations have begun." (Citation omitted.) *Williams v. State*, 272 Ga. 828, 830 (5) (537 SE2d 39) (2000). "On appeal, the question is whether evidence supports the trial court's

12

determination." (Citations and punctuation omitted.) *Butler v. State*, 290 Ga. 412, 417-418 (5) (721 SE2d 876) (2012).

When the issue was first brought to the trial judge's attention around 10:30 a. m. on a Friday, at the beginning of the second day of jury deliberations,[7] he questioned the foreperson who stated that Juror Vuong was "a little itchy" and was trying to speed up the decisional process. The trial court then questioned Juror Vuong who said that he either had to leave around noon to make the flight to St. Louis for a trade show or drive nine to ten hours overnight to get there by the next day. He stated that the staffing at his company was lean, so apparently no one was available to take his place. The juror said that he told the attorneys about this flight during voir dire. Nevertheless, Juror Vuong felt that he could continue deliberating for a while longer, so the trial court sent him back to the jury room with the instruction that he should notify the bailiff "[i]f it gets to the point where you're concerned about your flight and it starts to distract you."

Later, around noon, Juror Vuong notified the bailiff of his continuing time pressure, and the trial judge questioned him again. Juror Vuong said that

[7] The jury had deliberated only about 1 ½ hours the day before.

13

he was "a little pissed" by other jurors talking about the same thing over and over again,[8] and he ultimately admitted that his impending flight was distracting him. Both the prosecution and counsel for Jupiter deferred to the trial court's judgment on a decision whether to excuse Juror Vuong, but Hines' attorney objected, asserting that the juror's civic duty should take priority over his job. The trial judge decided to excuse Juror Vuong and substitute the alternate juror based upon Vuong's admission that he would be distracted and that he was irritated with the other jurors for their repetitive discussions. The trial court concluded that "this person would be worried about his flight and his work and his job and not giving this case his full attention."

We find no abuse of discretion, and we also note that Hines "does not contend that the alternate juror who replaced [Juror Vuong] was not qualified to serve." (Citations and punctuation omitted.) *Butler v. State*, 290 Ga. at 418 (5). See *White v. State*, 287 Ga. 713, 718-719 (2) (699 SE2d 291) (2010) (no abuse of discretion in dismissing juror who was tardy to court and who spoke

---

[8] Although at the time, certain jurors had indicated that they would not change their vote, no indication yet existed that the jury might become deadlocked. The jury foreman told the judge that she believed that the jury could still reach a verdict at that point.

14

with a member of victim's family in what appeared to be an attempt to be dismissed in order to make a flight for a family trip); *Rivera v. State*, 282 Ga. 355, 361 (7) (647 SE2d 70) (2007) (no error in dismissing juror who had an ongoing hardship with arranging childcare). Cf. *McClain v. State*, 267 Ga. 378, 381 (1) (c) (477 SE2d 814) (1996) (no abuse of discretion in excusing juror who stated that her responsibilities as publicity chairman for an upcoming fiftieth anniversary reunion of a worldwide organization might distract her from her duties as a juror); *Kirkland v. State*, 247 Ga. App. 526, 527 (2) (543 SE2d 791) (2000) (no abuse of discretion in excusing juror with work commitments that no one else could perform), reversed on other grounds, *Kirkland v. State*, 274 Ga. 778 (560 SE2d 6) (2002), and overruled on other grounds in *Ward v. State*, 288 Ga. 641, 647 (4) (706 SE2d 430) (2011).

3. Hines contends that the trial court erred in allowing Timmons to speculate about Hines' knowledge of the robbery. But Hines failed to identify or quote the testimony by Timmons that she contends was speculative and provided no record citation, either on appeal or in the trial court below. We note that "[Hines] bears the burden of proving error affirmatively by the record. It is not the function of this court to cull the record on behalf of a party in

15

search of instances of error." (Citations and punctuation omitted.) *Wade v. State*, 305 Ga. App. 382, 383 (1) (700 SE2d 827) (2010).

The State, however, points to certain portions of Timmons' testimony that appear to fit within Hines' general description and we will address that testimony. On one occasion, Jupiter's counsel asked Timmons whether Hines and her son went into the Lucky store and "cased" it before the robbery, and Timmons responded, "That's what I thought they did[,]" although he then admitted that he could not really say what they did. Hines' counsel raised no objection to this testimony, however, so any error in this regard is waived. *Brooks v. State*, 281 Ga. 514, 516 (2) (640 SE2d 280) (2007).

On another occasion, the prosecutor asked Timmons on re-direct whether "based on [Hines'] actions and what she said to you, do you think she was aware of what was going on?" Timmons responded in the affirmative, and Hines' counsel objected on the ground that the question called for speculation. The trial court overruled the objection. Later on re-cross, Hines' counsel asked Timmons, "So when you say [the robbery plans were] already established, you're just assuming that my client was involved simply because she showed

16

up there in a car with Mr. Jupiter, right?" Timmons responded, "Yes sir. She knew something about it."

"Admission of evidence is a matter which rests largely within the sound discretion of the trial court and an appellate court will not interfere with its rulings absent abuse of that discretion." (Citation and punctuation omitted.) *Sailor v. State*, 265 Ga. App. 645, 648 (2) (595 SE2d 335) (2004). Nevertheless,

> [l]ay witnesses may state their opinion only when it is based upon their own observations, and their opinions are admissible only when it is necessary in order for a witness to convey those same observations to the jury. A lay witness may not state his opinion when the facts relied upon by the witness can be clearly described for the jury, and the jury can rely upon those same facts and reach its own opinion. Otherwise, by stating an opinion the jury could reach for itself, the lay witness is deemed to have invaded the jury's exclusive province.

(Citations and punctuation omitted.) *Hines v. State*, 276 Ga. 491, 494 (4) (578 SE2d 868) (2003). Even assuming that the trial court erred in overruling Hines' objection, however, we find that any such error would be harmless in light of the other evidence in the case. The response Timmons gave to the prosecution

17

and to Hines' counsel on re-cross was essentially the same: Timmons believed that Hines was aware of the crime before the robbery occurred. That Timmons held this belief was apparent from his testimony that Hines tried to talk to him about the robbery beforehand and that she handed him the gun he used to commit the crime. No error exists when the contested evidence is merely cumulative of other relevant evidence. *Quarles v. State,* 285 Ga. App. 758 (647 SE2d 415) (2007). We find no ground for reversal.

4. Hines next asserts that the prosecutor made prejudicial and improper comments during closing argument. Although the closing arguments were not transcribed, Hines' counsel later placed the trial court's overruling of his earlier objection on the record. He asserted that it was "very improper for the State . . . to tell the jury, and he did it twice, that if they can't reach a decision, then the State would just have to impanel another jury." He asserted "that's subtracting from the jury, their responsibility. [It's] like telling the jury[,] look, if you can't decide, we're just going to have to do this again." The trial court corrected counsel, however, by stating that the prosecutor had only told them once "that if they couldn't decide it that another jury would be brought in at a later time to decide it."

18

But " absent a transcript, this court can only presume that this portion of the trial was conducted in a regular and proper manner. When an appellant seeks to prove error in the trial proceedings, the burden is on him to produce a transcript of the allegedly erroneous matter." (Citations and punctuation omitted.) *Powell v. State*, 198 Ga. App. 509, 512 (2) (402 SE2d 108) (1991). Hines failed to meet this burden.

And even if we were to find that Hines' counsel preserved the issue for appellate review, no basis exists for reversal. At trial, Hines' counsel objected on the ground that the prosecutor's argument diminished the jury's responsibility to decide the case, but on appeal Hines asserts that the comments "were improper in that they encouraged the jury, not to 'decide' the case, but to 'convict', otherwise another jury would be empanelled to 'convict'." Thus while Hines objected to the prosecutor's argument, she did not object on the ground she now asserts. "To preserve an objection upon a specific ground for appeal, the objection on that specific ground must be made at trial, or else it is waived." (Citation and punctuation omitted.) *Scoggins v. State*, 306 Ga. App. 760, 762 (1) (703 SE2d 356) (2010). Accordingly, Hines' claim has been waived and presents no basis for reversal on appeal.

19

5. Hines also takes issue with the trial court's charge to the jury on the law regarding party to a crime, and the trial court's failure to charge the jury on knowledge. .

(a) Hines asserts that the trial court erred in charging the jury regarding the law of party to a crime because the State did not submit the charge in writing until the third day of trial in violation of Uniform Superior Court Rule ("USCR") 10.3. But as the State correctly notes, "it has been repeatedly held that . . . a jury charge may be given on . . . parties to a crime even though a defendant is not indicted under those theories." (Citations omitted.) *Huey v. State*, 263 Ga. 840, 842 (3) (439 SE2d 656) (1994). And we find that the trial court would have been authorized to instruct the jury sua sponte on the issue because the evidence in this case authorized such a charge, regardless of whether the State submitted a timely request. See *Williams v. State*, 290 Ga. 533, 538 (2) (c) (722 SE2d 847) (2012) (court may charge jury sua sponte on party to a crime); *Gagnon v. State*, 240 Ga. App. 754, 755 (1) (525 SE2d 127) (1999) (USCR 10.3 provides no express penalties for a violation of the rule).

(b) Hines also contends that the trial court erred in failing to instruct the jury on "knowledge." Hines' trial attorney did not submit any written charge

20

requests,[9] and she does not specifically identify the point of law or any language she asserts the trial court should have charged. But we will assume, arguendo, that Hines is referring to the pattern jury charge on knowledge in the context of the law on party to a crime.[10] Because Hines' trial attorney made no objection and raised no exception to the trial court's charge on this ground, Hines failed to preserve this objection for appellate review, and she is entitled to reversal only if the jury instruction constituted "plain error." OCGA § 17-8-58 (b); *State v. Kelly,* 290 Ga. 29, 31 (1) (718 SE2d 232) (2011).

"[T]he appellate courts will review properly enumerated and argued claims of jury instruction error regardless of whether the appealing party specifically casts the alleged infirmity as 'plain error,' although failing to articulate how the alleged error satisfies the high standards required to

---

[9] Hines asserts that her trial attorney requested the pattern jury charge on knowledge , and the attorney stated at the hearing on her motion for new trial that the only thing he would have requested is that the trial court give the complete charge on party to a crime, which includes a knowledge component. But the record indicates that Hines' attorney neither requested such a charge nor objected when such a charge was not given.

[10] See Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II, § 1.43.10 (stating that the State must prove beyond a reasonable doubt that the defendant knew that the crime was being committed and that he or she knowingly and intentionally participated in or helped in the commission of the crime).

21

establish plain error increases the likelihood that an appellate court will reject the claim." (Citations and punctuation omitted.) *Stuart v. State*, 318 Ga. App. 839, 840 (734 SE2d 814) (2012). Here, Hines makes absolutely no effort to articulate how the omission of a charge on knowledge satisfies the plain error standard in this case.

> In conducting a plain error review, we consider first whether the record establishes an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. If so, we then consider whether the error was clear or obvious, whether it likely affected the outcome of the trial, and whether we should exercise our discretion to remedy the error.

(Citations and punctuation omitted.) Id. at 840-841.

Addressing the first step in the plain error analysis, we are mindful that "[i]t is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error." (Citation and punctuation omitted.) *Vergara v. State*, 287 Ga. 194, 198 (3) (b) (695 SE2d 215) (2010). The trial court in this case instructed the jury that the defendant is presumed innocent, that the State has the burden to prove each element of the crime beyond a reasonable doubt, that intent is an essential

22

element of any crime, that a defendant is not presumed to have acted with criminal intent, and that intent may be shown in various, specified ways. Additionally, the trial court defined reasonable doubt and charged the jury on law regarding mere suspicion and mere presence. We find, therefore, that the trial court's charge covered substantially the same principles as the pattern jury charge on knowledge. See *Copeland v. State*, 263 Ga. App. 776, 780 (2) (589 SE2d 319) (2003). See also *Smallwood v. State*, 296 Ga. App. 16, 25 (4) (e) (673 SE2d 537) (2009), abrogated on other grounds, *Stephens v. State*, 289 Ga. 758, 760 (1) (a), n. 2 (716 SE2d 154) (2011). Accordingly, we find no basis for reversal on this ground.

6. Hines also asserts that the trial court erred in giving the jury an *Allen* charge when it announced it was deadlocked, that the *Allen* charge given by the trial court was unconstitutional, and that the trial court erred in denying her motions for a mistrial in connection with the charge.

"When a jury reports difficulty in reaching a unanimous verdict, whether to give an *Allen* charge is committed to the sound discretion of the trial court, and we review the decision to give such a charge only for an abuse of discretion." (Citations omitted.) *Contreras v. State* 314 Ga. App. 825, 826 (2)

23

(726 SE2d 107) (2012). See also *Johnson v. State,* 278 Ga. 136, 138 (4) (598 SE2d 502) (2004); *Sears v. State,* 270 Ga. 834, 838 (1) (514 SE2d 426) (1999).[11] As this Court has previously explained, "the giving of an *Allen* charge amounts to an abuse of discretion when the terms of the charge itself, or the circumstances in which it is given, are coercive, so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." (Citation and punctuation omitted.) *Contreras v. State*, 314 Ga. App. at 826 (2).

The jury in this case began deliberating on the fourth day of trial at approximately 1:30 p.m. and ended at 3 p.m. when the jury was sent home due to a prior commitment by the trial court. Deliberations began again the next day at 9 a.m. and continued for approximately three hours and twenty minutes until the trial judge released Juror Vuong. The jury then broke for lunch and resumed deliberations at approximately 1:30 p.m. after the trial court instructed them that they had to begin their deliberations from the beginning with the

---

[11] "The grant or denial of a motion for mistrial is similarly within the sound discretion of the trial court and subject to the same standard of appellate review." *Georgia Communications Corp. v. Horne*, 174 Ga. App. 69, 70 (4) (329 SE2d 192) (1985).

alternate juror. At approximately 3:35 p.m., the jury sent the judge a note indicating that they had reached a verdict on all counts as to one of the two defendants, but they were "[h]ung on [the] other defendant."

The trial judge indicated that he was inclined to give an *Allen* charge to encourage the jury to reach a verdict on the other defendant, and neither the State nor Jupiter's attorney had any objection to that procedure. Hines' attorney, however, asked the trial court to receive the verdict on the one defendant and to declare a mistrial as to the other. The trial court denied the motion for mistrial. The jury had been deliberating less than two hours with the alternate juror, and the trial judge determined that was an insufficient time to declare the jury hung and grant a mistrial in a case that took four days to try.

After confirming with the foreperson that the jury was deadlocked, the trial court then gave a charge that substantially tracked the language of the pattern jury charge.[12] Hines' counsel objected to the charge on the ground that it was coercive, and again moved for a mistrial, which the trial court denied. The jury returned with a verdict as to both defendants at 5:03 p.m. The trial

---

[12] See Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II, § 1.70.70.

25

court polled the jury and each juror confirmed the verdict and that it was freely and voluntarily given.

We find no abuse of discretion in the trial court's decision to deny Hines' motions for mistrial[13] and to give an *Allen* charge under the facts of this case. See *Sears v. State,* 270 Ga. at 838 (1) (no abuse of discretion in requiring further deliberation where jury first indicated it was deadlocked after nine hours, and again after three more hours); *Todd v. State*, 243 Ga. 539, 542 (3) (255 SE2d 5) (1979) (no abuse of discretion in denying mistrial and giving *Allen* charge after four hours; judge "not bound to accept the jury's feeling that it is hopelessly deadlocked"); *Pendley v. State*, 283 Ga. App. 262 (641 SE2d 174) (2006) (no abuse of discretion in giving *Allen* charge and denying mistrial where jury had been deliberating less than two days).

Nor do we find that the charge was impermissibly coercive. Hines has not established that the charge deviated from any legal rule. See *Scott v. State,* 290 Ga. 883, 888 (6) (725 SE2d 305) (2012) (no error when defendant failed

---

[13] Although Hines argues that the trial court should have followed the procedure suggested in this Court's case of *Thornton v. State*, 145 Ga. App. 793, 794 (245 SE2d 22) (1978), those procedures are not mandatory, and, in fact, the Court in *Thornton* found that the trial court's failure to inquire further into the nature of a jury's deadlock did not constitute reversible error.

to identify any language in pattern charge as given was potentially coercive). And the fact that the charge was given after two hours of deliberation with the alternate juror and approximately seven hours of total deliberation and a verdict was returned one and a half hours later does not render it coercive. See *Sharpe v. State,* 288 Ga. 565, 567 (5) (707 SE2d 338) (2011) (length of deliberations alone cannot make a charge coercive). See also *Gamble v. State*, 291 Ga. 581, 584 (5) (731 SE2d 758) (2012) (pattern charge not coercive when given after two hours of deliberation and verdict returned less than one hour later).

Accordingly, we find no basis for reversal in connection with the *Allen* charge.

7. Hines also asserts that she received ineffective assistance of trial counsel.

"To establish ineffective assistance, [Hines] must show both that [her] trial counsel's performance was deficient and that this deficiency prejudiced [her] defense. [Hines] must establish both elements; if we determine that one element is missing we need not consider whether the defendant has established the other element." (Citations omitted.) *Hinton v. State*, 290 Ga. App. 479, 481

(2) (659 SE2d 841) (2008). See also *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

Hines alleges six ways in which she asserts that her trial counsel was deficient and asserts in conclusory fashion that "[i]t cannot be said that such errors and omissions were trial strategy." But neither on appeal nor below did Hines even assert, much less make any attempt to establish, that these alleged errors and omissions prejudiced her defense. Accordingly, Hines has failed to carry her burden of establishing her claim of ineffective assistance of counsel. *Mathis v. State*, 299 Ga. App. 831, 841 (4) (684 SE2d 6) (2009) ("[Defendant] does not allege that he was prejudiced by trial counsel's allegedly deficient performance, and therefore, under the *Strickland* test, his claim for ineffective assistance of counsel fails.").

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*

28