306 Ga. 722
FINAL COPY

S19A0927.  BENTON v. HINES.

BLACKWELL, Justice.

In 2009, Bridgette Hines was convicted of armed robbery and other crimes in connection with the robbery of a convenience store, and she was sentenced to imprisonment for 20 years. Her convictions were affirmed on appeal. See Hines v. State, 320 Ga. App. 854 (740 SE2d 786) (2013). Then, in 2017, Hines filed a petition for a writ of habeas corpus, alleging that she was denied the effective assistance of counsel on appeal. The habeas court agreed with Hines and set aside her convictions. The Warden appeals, and we reverse.

1. The evidence presented at her trial shows that Hines, Geoffrey Jupiter, and Ricky Timmons were involved in the robbery. Hines and Jupiter were tried together, and Timmons testified against them. Timmons had agreed to testify for the prosecution as a part of a plea deal that allowed Timmons to plead guilty to simple

robbery and avoid prosecution for the greater offense of armed robbery.

At trial, Timmons testified that, late on the evening of January 1, 2009, Hines, her son (who was then 12 years of age), and Jupiter picked him up from his house. Hines then drove the group to Lucky's convenience store near Jonesboro. Hines and her son went into the store while the others waited in the car. Hines and her son then returned to her car, and Hines drove the group to a nearby residential area. There, Hines stopped and asked her son to remove the car's license plate. At some point, Hines gave Timmons a gun. Hines then drove the group back to Lucky's and parked on the far side of the lot, away from the store. Timmons and Jupiter went inside the store, both wearing masks and carrying guns. Timmons told the clerk to "freeze" while Jupiter grabbed cash from behind the counter. Both men then ran out, they got back into the car, and Hines drove them away from the scene. Shortly afterwards, they were stopped by law enforcement officers, at which point Timmons and Jupiter jumped out of the car and ran away. Timmons was

caught almost immediately, but Jupiter escaped and was apprehended later. Shortly after his arrest, Timmons gave a written statement to investigators that was largely consistent with his trial testimony.

To corroborate Timmons's version of events, the State relied primarily on the testimony of two law enforcement officers, each of whom happened to be in the area at the time of the robbery. Each officer testified, based on his observations, that two men ran across Lucky's parking lot and jumped into a car parked at the edge of the lot, that the car then took off at a "high rate of speed" with its lights off, and that there was no tag on the vehicle. The officers followed and stopped the car, at which point two men jumped out and ran. One of the officers gave chase and arrested Timmons, while the other detained Hines (who was driving the car) and her son. A nine-millimeter pistol was found under the driver's seat, near where Hines's son was seated. The officers also found a BB gun outside the vehicle, near the front passenger door. Cigars and cash were "all

over" the front passenger seat. Hines's son had hundreds of dollars in cash stuffed into the sleeve of his jacket.

After the prosecution rested, Hines testified in her own defense. She explained that, earlier on the day in question, her son saw that the license plate on her car "was hanging by one screw," and so he removed it and placed it next to the back window. She said that she drove to Lucky's with Jupiter and Timmons because the store had a slot machine that she wanted to play for money, and Jupiter had told her that he knew "the people" at Lucky's who would let her play for money. Hines further testified that, when they arrived at Lucky's, she and her son went inside the store, but the clerk refused to let her play. As Hines got back in the car and began to drive away, Timmons said he wanted to get some cigarillos, and so she turned around in a nearby parking lot and drove back to Lucky's. Jupiter and Timmons got out of the car and went inside the store. Hines testified that they were inside just long enough to make a purchase when she saw them running from the store. She did not see them wearing anything unusual or carrying any weapons. She

4

pulled out of the parking lot and into the street, and only then remembered to turn on her headlights. Hines denied knowing about the robbery before her car was stopped by the officers. Hines's testimony, however, was inconsistent with a statement she previously had given to investigators. In that statement, she indicated that Jupiter offered to pay her for "a ride," that the license plate was removed after the initial visit to Lucky's, and that she saw "the gun" before Jupiter and Timmons went inside the store.

After she was convicted and sentenced, Hines obtained new counsel to represent her in post-conviction proceedings. Hines's motion for new trial was denied, and her attorney sought review in the Court of Appeals, raising 16 claims of error, including several claims of ineffective assistance of trial counsel. The Court of Appeals affirmed, rejecting all these claims of error. See Hines, 320 Ga. App. 854.

On August 31, 2017, Hines filed a habeas petition in Habersham County, initially asserting four claims of ineffective assistance of appellate counsel. She later withdrew all of her claims

except one — that her appellate lawyer rendered ineffective assistance when he failed to raise the issue of trial counsel's ineffectiveness as to the impeachment of Timmons. About her sole remaining claim, Hines argued that her trial counsel failed to cross-examine Timmons about the fact that he faced a potential life sentence for armed robbery with no parole eligibility for 30 years, but for his deal in which the State agreed that he could plead guilty only to simple robbery and testify against Hines (and Jupiter).[1] This failure to impeach Timmons, Hines argued, was the basis for a claim of ineffective assistance of trial counsel that her appellate counsel should have raised on direct appeal. Because her appellate counsel raised no such claim, she was denied the effective assistance of counsel on appeal, she concluded. Following a hearing, the habeas

---

[1] See OCGA § 16-8-41 (b) ("A person convicted of the offense of armed robbery shall be punished by . . . imprisonment for life or by imprisonment for not less than ten nor more than 20 years."). See also OCGA § 17-10-6.1 (c) (1) ("[F]or a first conviction of a serious violent felony [including armed robbery] in which the accused has been sentenced to life imprisonment, that person shall not be eligible for any form of parole or early release . . . until that person has served a minimum of 30 years in prison. . . ."). Compare OCGA § 16-8-40 (b) ("A person convicted of the offense of robbery shall be punished by imprisonment for not less than one nor more than 20 years.").

court concluded that Hines was entitled to relief on this claim and issued the writ.

2. To obtain habeas relief based on the denial of the effective assistance of appellate counsel, a petitioner must establish that her "appellate counsel was deficient in failing to raise an issue on appeal and that, if counsel had raised that issue, there is a reasonable probability that the outcome of the appeal would have been different." Trim v. Shepard, 300 Ga. 176, 177 (794 SE2d 114) (2016) (citation and punctuation omitted). In analyzing an appellate attorney's performance, "the question is not whether [the] attorney's decision not to raise a particular issue was correct or wise, but rather, whether his decision was an unreasonable one which only an incompetent attorney would adopt." Id. (Citation and punctuation omitted.) A lawyer's failure to raise a claim on appeal might be unreasonable if that claim had "clear and strong merit under the law as it existed at the time of the appeal," Martin v. McLaughlin, 298 Ga. 44, 45 (779 SE2d 294) (2015), but if the claim had "doubtful merit . . . it generally cannot be said that every competent lawyer

7

would have asserted it, and so, the failure to assert the claim ordinarily would not amount to deficient performance," Trim, 300 Ga. at 178. See also Hooks v. Walley, 299 Ga. 589, 591 (791 SE2d 88) (2016) (appellate counsel "does not have a duty to advance every nonfrivolous argument that could be made" (citation and punctuation omitted)).

Hines has failed to show ineffective assistance of appellate counsel. As mentioned above, the underlying claim in this case (the claim that Hines believes her appellate lawyer should have raised) is that trial counsel rendered ineffective assistance in failing to cross-examine Timmons about the maximum time he would be facing if he had not made a plea deal and instead was convicted of armed robbery. The merit of this claim, however, is doubtful at best. Even if Hines could have shown that her trial counsel acted deficiently in failing to impeach Timmons on this particular issue, she likely would not have been able to show prejudice.[2]

---

[2] The standard for showing trial counsel's ineffectiveness is essentially the same as for appellate counsel — the defendant generally must prove that

The trial transcript shows that Timmons was cross-examined extensively about his plea deal by Hines's and Jupiter's attorneys. The jury learned from this cross-examination that, by making a plea deal, Timmons was avoiding a ten-year mandatory minimum sentence "with no chance of parole."[3] The jury also learned that, regardless of the sentence Timmons now would receive as a result of his guilty plea, he would be eligible for parole immediately.[4] So the jury knew that Timmons received a significant benefit in exchange for pleading guilty and testifying for the State. We cannot say that the marginal value of additional impeachment based on Timmons's

---

trial counsel's performance was deficient and that this deficiency prejudiced the defense. See Strickland v. Washington, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); Eagle v. Linahan, 279 F3d 926, 938 (III) (11th Cir. 2001) ("The same standard applies whether we are examining the performance of counsel at the trial or appellate level."). To show prejudice, a defendant must "demonstrate the reasonable probability that, absent the claimed professional errors by counsel, the result of his trial would have been different." Roberts v. State, 296 Ga. 719, 724 (2) (770 SE2d 589) (2015).

[3] See OCGA § 17-10-6.1 (b) (1), (c) (4) (a person convicted of armed robbery "shall be sentenced to a mandatory minimum term of imprisonment of ten years," and this sentence "shall not be reduced by any form of parole or early release").

[4] We express no opinion as to the accuracy of Timmons's (or the defense attorneys') representations to the jury about his potential sentence.

potential maximum sentence (which the jury had no reason to believe he would actually receive) would have made a difference in the jury's assessment of his credibility, especially since his testimony was corroborated by other evidence, including the testimony of two police officers and Hines's own incriminating statement. See McCoy v. State, 303 Ga. 141, 143 (2) (810 SE2d 487) (2018) (trial counsel's failure to impeach witness with particular information did not result in prejudice where such information had "only marginal impeachment value" and the evidence of guilt was strong). See also Sims v. State, 280 Ga. 606, 608 (3) (631 SE2d 656) (2006).

Given the foregoing, Hines's appellate lawyer reasonably could believe that raising a claim of trial counsel's ineffectiveness on the issue of Timmons's impeachment would not have succeeded on appeal, and so Hines has not shown that her appellate lawyer was deficient in failing to raise this claim. See Hooks, 299 Ga. at 594 (habeas petitioner failed to show that appellate counsel performed deficiently in failing to raise a claim of trial counsel's ineffectiveness,

10

even if that underlying claim was potentially meritorious). See also

Arrington v. Collins, 290 Ga. 603, 606 (1) (724 SE2d 372) (2012).

Accordingly, the habeas court erred when it granted the writ of

habeas corpus to Hines.

Judgment reversed. All the Justices concur.

DECIDED SEPTEMBER 3, 2019.

Habeas corpus. Habersham Superior Court. Before Judge Caudell.

*Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant Attorney General*, for appellant.

*Zell & Zell, Rodney S. Zell*, for appellee.