**FIFTH DIVISION
MCFADDEN, P. J.,
BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 27, 2023**

# In the Court of Appeals of Georgia

A23A0136. DEPARTMENT OF TRANSPORTATION v. 0.095 ACRES OF LAND et al.

McFADDEN, Presiding Judge.

This case involves the just and adequate compensation that the Department of Transportation owes Lamar and Melody Pendley for the partial taking of their property for a highway project. See Ga. Const. of 1983, Art. I, Sec. III, Par. I (a). In a partial-taking case, "just and adequate compensation is the sum of the market value of the property that is taken and the consequential damage, if any, to the property that remains, both measured at the time of taking." *Toler v. Dept. of Transp.*, 328 Ga. App. 144, 146 (1) (761 SE2d 550) (2014) (citation and punctuation omitted).

After the trial court entered judgment on a jury verdict awarding the Pendleys $648,800, the Department of Transportation appealed. The Department contends that

the trial court improperly allowed the Pendleys to present certain evidence of consequential damages to their remaining property because that evidence pertained to losses caused by the overall project rather than the specific taking; addressed damages that were shared by the public rather than specific to the Pendleys; or concerned the condition of the property after the taking had occurred.

But as detailed below, the Department did not preserve its evidentiary objections for ordinary appellate review. The trial court never definitively denied the motion in limine in which the Department raised these objections, and the Department did not object contemporaneously to the evidence when it was presented.

Moreover, the Department has not met the stringent requirements to obtain reversal based on plain error. The Department has made no argument whatsoever as to plain error, and any error by the trial court was not obvious. So we affirm.

1. *Facts and procedural history.*

The record shows that the Pendleys owned approximately 14 acres of real property. Although their property was zoned for residential use, the Pendleys had a variance that allowed them to operate a commercial business on it behind their residence.

In December 2015, the Department petitioned to take .095 acres of the Pendleys' property as part of a project to replace the two-lane county road fronting the property with a four-lane state highway. The new highway would not actually be built on the property taken from the Pendleys; instead, the taken property would be used as a right-of-way next to the highway. The Department estimated $4,500 to be just and adequate compensation for the taking.

Dissatisfied with that amount of compensation, the Pendleys sought a jury trial under OCGA §§ 32-3-14 and 32-3-16. After the parties conducted discovery, the Department filed a pretrial motion in limine to prevent the introduction of certain evidence of purported consequential damages. In that motion, the Department argued that the Pendleys should be barred from introducing "evidence purporting to show a diminution in fair market value of [the Pendleys'] remaining property based solely upon the widening of the existing road fronting [their] property[,]" specifically the anticipated testimony of the Pendleys' expert appraiser, Bruce Penn. The Department also argued that the Pendleys should be barred from introducing "evidence of purported consequential damages based upon facts derived significantly after the date of taking[,]" specifically the anticipated testimony of the Pendleys' expert traffic engineer, Marc Acampora.

3

After a hearing on the Department's motion in limine, the trial court entered an order provisionally denying it, holding that the Department "ha[d] not shown that the evidence it seeks to exclude would not be admissible under any circumstances at trial[.]" The trial court noted that her denial of the motion was based on the limited record before her and was without prejudice. And the trial court stated that the Department could "rais[e] these same objections at trial on the basis of the evidentiary record as developed at that time."

During the jury trial but before the Pendleys presented testimony from either Penn or Acampora, the Department renewed its motion in limine. The trial court stated, "For purposes of the record, I note you renewed the motion. The motion is made on all the same grounds as previously stated; is that correct?" The Department's counsel stated that it was. Then the following exchanged occurred:

> THE COURT: And we were present here in court approximately two weeks ago, you presented your evidence. [The Pendleys' counsel] was here. He presented his defenses, and the Court denied your motion in limine.
>
> [THE DEPARTMENT'S COUNSEL]: Has the Court changed its mind?
>
> THE COURT: No, I haven't changed my mind. I still deny it today.

4

Subsequently, the Pendleys introduced the challenged testimony without objection by the Department. Their expert appraiser, Penn, opined that just and adequate compensation for the partial taking was $648,800. He based this figure in part on his opinion that the Pendleys suffered consequential damages to their remaining property caused by the conversion of the road to a four-lane state highway. Penn testified that the construction of a four-lane highway would diminish the remaining property's fair market price and opined as to what someone would pay to buy the property after the construction of the highway. This was partly because the highway would negatively affect the ability for vehicles to safely enter and exit the Pendleys' driveway. He testified that some of those costs were unique to the Pendleys due to their business use of the property.

The Pendleys' expert traffic engineer, Acampora, addressed safety improvements that he believed might be required by the construction of the four-lane state highway. He opined at trial that, once the four-lane highway was built, a right-turn deceleration lane would be needed for the Pendleys' driveway. He based this opinion on the anticipated volume of traffic on the road, including the volume of traffic turning in and out of the Pendleys' driveway, including trucks which served

5

their business. In support of this opinion, Acampora testified that he personally performed traffic counts in December 2017 and May 2021, and the Pendleys also introduced documentary evidence of those traffic counts. The Department expressly did not object to the admission of the traffic-count exhibits.

On appeal, the Department argues that "[a]ll of the evidence of the Pendleys' claim for consequential damages was improperly admitted at trial," pointing to the opinion testimony of the Pendleys' expert appraiser, Penn, and their expert traffic engineer, Acampora. The Department asserts that this evidence was not relevant, and should not have been admitted, for three reasons: (1) because it concerned damages that were not alleged to have been caused by the specific taking of the small portion of land for the right-of-way, but rather concerned damages caused by the road-expansion project generally; (2) because it concerned damages that were shared by the public rather than being specific to the Pendleys; and (3) because, in the case of the traffic engineer's testimony, it was based on traffic-count data obtained after the taking.

2. *The claimed errors have not been preserved for ordinary appellate review.*

The Department did not properly preserve its evidentiary challenges for ordinary appellate review. Our Evidence Code provides that "[e]rror shall not be

predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected and . . . a timely objection or motion to strike appears of record. . . ." OCGA § 24-1-103 (a) (1). "Once the court makes a *definitive* ruling on the record admitting . . . any evidence, either at or before trial, a party need not renew an objection . . . to preserve such claim of error for appeal." OCGA § 24-1-103 (a) (emphasis supplied). The question here is whether the trial court's rulings denying the Department's motion in limine were definitive rulings, such that the Department was not required to object to the evidence when it was introduced.

The trial court's initial, written ruling denying the Department's motion in limine was not a definitive ruling because it left open the possibility that the court would revisit the issue later. As detailed above, the trial court made the ruling "without prejudice" and contemplated that the Department could raise the issue again at trial, after the evidence was more fully developed. A ruling that leaves open the possibility of the future admission of the evidence is not definitive. See *Wilson v. State*, 301 Ga. 83, 87-88 (2) (799 SE2d 757) (2017). See also *Yates v. Pinella Hematology & Oncology*, 21 F4th 1288, 1297 (II) (11th Cir. 2021) ("if the trial court's ruling is tentative or *without prejudice*, there is no definitive ruling on the objection") (emphasis supplied).

And even though the Department renewed the motion in limine at trial, the record does not show that the trial court definitively ruled on the renewed motion. Rather, as set forth more fully above, when the Department's counsel asked the trial court if she had "changed [her] mind" about the earlier ruling, the trial court replied that she had not and that she "still den[ied] it." There was no indication that the trial court intended her ruling on the renewed motion to be different in any way than her earlier, non-definitive pretrial motion. There was also no discussion by counsel or the trial court as to whether the evidence had been sufficiently developed to allow a different, more definitive ruling. As stated above, neither of the expert witnesses whose testimony was at issue had begun to testify in the trial.

Arguably, the definitiveness of the trial court's ruling on the renewed motion in limine was unclear. But in such circumstances, the Department had the burden to clarify that issue. An advisory committee note to Federal Rule of Evidence 103 (b), after which OCGA § 24-1-103 (a) is "specifically patterned," *Williams v. Harvey*, 311 Ga. 439, 445 (1) (a) (858 SE2d 479) (2021), explains that the rule "imposes the obligation on counsel to clarify whether an in limine or other evidentiary ruling is definitive when there is doubt on that point." Advisory Committee's Notes to Federal Rule of Evidence 103 (b). Such notes are highly persuasive authority in construing

8

provisions of our new Evidence Code that are materially identical to Federal Rules of Evidence, such as OCGA § 24-1-103, see *State v. Almanza*, 304 Ga. 553, 559 (3) n. 6 (820 SE2d 1) (2018), and our Supreme Court has acknowledged this particular note in discussing OCGA § 24-1-103 (a). See *Williams*, 311 Ga. at 453 (2) n. 13.

Because the Department did not obtain a definitive ruling on the evidentiary challenges raised in its motion in limine and did not object contemporaneously to that evidence when it was introduced at trial, we may review its evidentiary challenges only for plain error. See OCGA § 24-1-103 (d); *Chrysler Group v. Walden*, 303 Ga. 358, 359 (812 SE2d 244) (2018).

3. *The Department has not shown plain error.*

To show plain error, the Department

must show an error or defect that has not been affirmatively waived by the [Department], that is clear and obvious, and that affected the [Department's] substantial rights by affecting the outcome of the trial court proceedings; if these three requirements are satisfied, we have the discretion to remedy the error but should do so only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Chrysler Group*, 303 Ga. at 370 (II) (B) (citation and punctuation omitted).

9

Neither side has made any argument on appeal as to whether or not these requirements for showing plain error have been met. Nevertheless, because the Department properly enumerated and argued its claims of erroneous evidentiary rulings, we will review those claims for plain error. *Hines v. State*, 320 Ga. App. 854, 864 (5) (b) (740 SE2d 786) (2013). But we point out that the Department's "fail[ure] to articulate how the alleged error[s] satisf[y] the high standards required to establish plain error increases the likelihood that [we] will reject the claim[s]." Id. (citation and punctuation omitted).

(a) *Evidence of diminution of value to the remaining property caused by the overall road project.*

The Department argues that the challenged testimony was inadmissible because it concerned the diminution of value to the Pendleys' remaining property caused by the overall road project, rather than by the taking of the specific .095 acres of land for the right-of-way. The Department has cited to several cases for the proposition that a property owner's consequential damages cannot arise merely from the general effects of a project but must arise from the use for which the specific property was taken. See, e. g., *Simon v. Dept. of Transp.*, 245 Ga. 478 (265 SE2d 777) (1980); *Herron v. MARTA*, 177 Ga. App. 201, 202-203 (2) (338 SE2d 777) (1985); *Riviera*

*Assoc. v. Dept. of Transp.*, 174 Ga. App. 29, 29-30 (329 SE2d 221) (1985); *Mason v. Dept. of Transp.*, 159 Ga. App. 471 (283 SE2d 690) (1981).

But the Pendleys argue that the Department's cases are factually inapposite. They cite *Dept. of Transp. v. White*, 270 Ga. 281, 282-283 (508 SE2d 407) (1998), in which our Supreme Court recognized that, depending on the facts of the case, the impact of an adjacent road or public transportation project may result in continuous and permanent consequential damage to the remainder which is compensable in a condemnation proceeding.

There is evidence in this case that the taking of the Pendleys' property for a right-of-way was necessary to facilitate the highway expansion, even if the expanded highway itself was not going to be placed on that property. Arguably, the negative effects of the highway expansion project on the Pendleys' remaining property arose from the use for which the right-of-way property was taken, making the facts of this case more similar to those in *White*, supra, than those in the authorities cited by the Department. Certainly, the availability of consequential damages in such circumstances must be decided case by case. See generally *DeKalb County v. United Family Life Ins. Co.*, 235 Ga. 417, 418 (219 SE2d 707) (1975) (compensable elements of damages in condemnation proceedings must be determined on a case-by-case

11

basis). So without reaching the issue of whether the trial court abused her broad discretion in admitting the evidence in this particular case, see generally *Smith v. State*, 299 Ga. 424, 429 (2) (b) (788 SE2d 433) (2016) (a trial court has broad discretion in determining the relevance and admissibility of evidence), we conclude that the Department "has failed to show plain error as it is not obvious under our precedent that [the trial court so abused her discretion]." *Williams v. State*, __ Ga. __ (3) (Case No. S23A0203, decided May 16, 2023).

(b) *Evidence of safety concerns with ingress and egress.*

The Department argues that the testimony regarding the need to mitigate safety concerns involving vehicles turning into the Pendleys' driveway from a four-lane state highway was inadmissible because it involved damages shared by the public rather than damages specific to the Pendleys. But as with the above argument, the Department has not shown that precedent demanded a different ruling by the trial court, so it has not shown that any error by the trial court was an obvious error. See *Williams*, __ Ga. at __ (3).

The Department cites authority for the proposition that changes in traffic patterns on adjacent roads generally are not compensable as consequential damages in condemnation proceedings. As a general rule, an "inconvenience . . . which is

12

shared by the public in general . . . is not compensable, [but one] which is special to the landowner . . . is compensable." *Dept. of Transp. v. Taylor*, 264 Ga. 18, 20 (3) (a) (440 SE2d 652) (1994). If a property owner's access to the property is not "terminated or obstructed, if he has the same access to the highway as he did [previously], his damage is not special, but is of the same kind, although it may be greater in degree, than that of the general public, and he has lost no property right for which he is entitled to compensation." *Dept. of Transp. v. Katz*, 169 Ga. App. 310, 312 (2) (312 SE2d 635) (1983) (citation and punctuation omitted). "[G]reater difficulty in ingress and egress which is occasioned by a change in traffic patterns is not an appropriate item of damages in [condemnation] proceedings." *Taylor*, 264 Ga. at 20 (3) (a) (citation and punctuation omitted).

Nevertheless, there have been cases in which Georgia courts have recognized compensable damages in condemnation proceedings based on facts similar to those here. For example, in *Dept. of Transp. v. George*, 202 Ga. App. 270, 273 (5) (414 SE2d 307) (1991), we held that a trial court did not err in admitting, to show consequential damages to the remaining property in a condemnation proceeding, evidence that changes to the adjacent road limited the ability for certain types of vehicles to access the property, where such access was "critical" to the business

13

conducted on that property. We cannot say that it was an obvious error for the trial court to allow similar evidence in this case.

(c) *Evidence of post-taking traffic data.*

The Department argues that the opinion testimony of the expert traffic engineer should not have been allowed because it was based on traffic counts performed after the December 2015 taking. But the Department has not shown plain error. As stated above, the Department affirmatively waived its objections to the underlying traffic-count documents entered into evidence during the traffic engineer's testimony, because the Department expressly stated that it had no objection to them. See *McAllister v. State*, 351 Ga. App. 76, 88 (3) (830 SE2d 443) (2019) (appellant affirmatively waived his objection to exhibits by stating that he had "no objection" to them when they were tendered into evidence, and so could not show plain error). And as to the opinion testimony itself, the Department again has not shown that the trial court made an obvious error.

"The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder in its circumstance just prior to the time of the taking compared with its market value in its new circumstance just after the time of the taking." *Wright v. MARTA*, 248 Ga. 372, 376 (283 SE2d 466)

14

(1981). But in determining whether there was diminution to the fair market value of the remaining property, a jury may consider whether a buyer contemplating a purchase of the remaining property at the time of the taking would take into account the impact of the anticipated completed project. See id. at 375. The expert traffic engineer's opinion testimony about the potential impact of the proposed four-lane state highway on access into and out of the property was relevant to that issue, and the Pendleys' expert appraiser referred to the traffic counts as a basis for reaching his opinion about the fair market value of the remaining property at the time of the taking.

*Judgment affirmed. Brown and Markle, JJ., concur*.